UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

WILLIAM COONROD,

        Plaintiff,                        Case No. 1:16-cv-407

v.                                            Honorable Paul L. Maloney

UNKNOWN SHERMAN et al.,

        Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Michigan Department of Corrections, Snow, Harry and Pant. The Court will serve the complaint on the remaining Defendants.

**Discussion**

I.  Factual allegations

Plaintiff presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Cooper Street Correctional Facility (JCS), though the events giving rise to his complaint occurred while he was housed at the Pugsley Correctional Facility (MPF) and the Duane Waters Hospital (DWH).  Plaintiff sues the following MPF officials:  Correctional Officers (unknown) Sherman, (unknown) Douglas, (unknown) Sour, (unknown) Wilson, (unknown) Eklin, Paul Kingsley, Adam Bourque, Patrick Hansen, and Michael Sobeck; Deputy Warden (unknown) Pratt; Sergeant Juanita Zamborowski; Captains Timothy Pant and (unknown) Snow; Warden Shirlee Harry; and Nurse Caitlin Buren.  He also sues the following DWH medical providers:  Nurse Dunning Myers; and Doctors (unknown) Tan, Harish Pandya, and Jeffrey Bomber, William Bogerding, and (unknown) Whiteman.  Plaintiff also sues the MDOC and Corizon Health Incorporated.

On March 27, 2014, Plaintiff was transferred to MPF.  During his first week at the facility, Plaintiff had some property stolen, including his shoes, fan and food.  He reported the property theft to Defendant Sherman, who generated an internal report about the incident.  Plaintiff apparently began to receive threats from inmates, because of having filed complaints about the thefts.  Plaintiff asked to be transferred to another unit, but Sherman denied his request.  Sherman did, however, suggest that Plaintiff write to Defendant Pratt to request a move.  Plaintiff wrote to Defendant Pratt, explaining the theft and threats, but Defendant Pratt never responded.  Thereafter, Plaintiff was again a victim of a theft, which he reported to Defendant Douglas.  Douglas instructed Plaintiff to write down the names of the individuals involved in the theft and the threats, but

Defendant Douglas twice refused Plaintiff's request to be moved. In the days that followed, Plaintiff reported his problems to Defendants Sour and Wilson and asked each on multiple occasions to move him. His requests were all denied.

In mid-April of 2014, Plaintiff's wife met with Defendant Eklin after a visit with Plaintiff. She told Eklin about the thefts, threats, and denials of Plaintiff's requests to move. Defendant Eklin allegedly told Plaintiff's wife that Plaintiff "had to put on his 'big boy' pants and deal with it himself." (Compl., ECF No. 1, PageID.15.) Plaintiff again met with Defendant Sherman, providing the information about all incidents, but Sherman refused to move Plaintiff. On April 25, 2014, Plaintiff spoke with a third-shift officer, who told Plaintiff to send a kite to Defendant Pratt. That same evening, Plaintiff sent another kite to Pratt, informing Pratt of the continuing threats and thefts and begging for a transfer. On April 26, 2014, Plaintiff's property was again stolen by the same inmates. Plaintiff confronted one of the thieves, who again threatened Plaintiff. At about 7:30 p.m. that evening, Plaintiff was assaulted by four inmates. He was stabbed nine times in the back, hit more than twelve times in the head, and struck in the head and face with a sap (made from a lock placed inside a sock). Plaintiff's nose was broken, and his eye socket was fractured in twelve places. As a result, Plaintiff lost the sight in his right eye, and the remainder of his vision was severely impaired.

During the assault, no staff were present on the ward, and Plaintiff could arouse no response by screaming for help. He finally made his way to the office, bleeding profusely. He knocked on the office window and told Defendant Kingsley what had happened and requested medical care. Plaintiff alleges that the need for care was patently obvious, due to the severe trauma to his head, face and side. Defendant Kingsley did not contact a nurse or ambulance. Defendants

Zaborowski and Bourque arrived and instructed Plaintiff to walk to the control center, offering him no assistance. Plaintiff waited on a bench for ten minutes before being allowed into health care. Once inside the health unit, Plaintiff was offered no medical attention until after he had been interviewed by custody staff, including Defendant Zaborowski, for 90 minutes. Nurse Buren delayed examining Plaintiff until the officers had completed their interrogation. When she finally examined Plaintiff, she noted extensive trauma. She told Defendants Hansen and Sobeck not to call an ambulance, because there was no time to wait for EMS. Ignoring protocol, Defendants Hansen and Sobeck therefore transported Plaintiff to Munson Community Hospital in a standard, state-issue sedan, unaccompanied by medical care, placing him at life-threatening risk. Plaintiff was immediately admitted for severe head trauma, critical puncture wounds to his side, and fractures of his facial bones. While Plaintiff was in the hospital, he was interviewed by Defendant Captain Pant and another officer. Despite his extremely limited vision, Plaintiff was able to identify three of his assailants, who were the same inmates who had been stealing from Plaintiff. With assistance, Plaintiff was able to provide Defendant Pant with a one-page statement about his assault.

The hospital arranged with the plastic surgeon to perform surgery the following day, April 27, 2014. Doctors also informed Plaintiff that they needed to operate on his right eye immediately, in order to save his sight. However, the MDOC instead ordered Plaintiff transferred to DWH for treatment, against the advice of hospital doctors. Forty-eight hours later, Plaintiff was finally transferred from Traverse City to Jackson, again by an ordinary state-owned van, rather than by ambulance, again subjecting Plaintiff to significant health risks. Plaintiff arrived at DWH at midnight, where he was admitted through the emergency room. Plaintiff was placed on a saline drip and given antibiotics, but he was given no pain medication for two days. For more than ten days,

Plaintiff was neither seen nor treated by a doctor. Only nurses provided any care to Plaintiff. Finally, on May 7, 2014, Plaintiff was taken to see a dentist, who immediately recognized the seriousness of the injuries and contacted the ophthalmologist, who then contacted the University of Michigan Hospital. Plaintiff was seen at the University of Michigan Hospital on May 9, 2014. Doctors determined that he needed emergency surgery to save his vision and to reconstruct his facial bones, but they concluded that too much time had passed to save his eye, given the pressure that had developed. Because of the eye pressure, doctors could not perform surgery immediately, and they prescribed medication to reduce the pressure. The first dose of medication was delivered at the hospital. However, when Plaintiff returned to DWH, he was not given his second dose for four days, because Corizon and its medical staff wished to reconsider the orders of the University of Michigan doctors.

In August of 2014, Plaintiff finally received his first surgery to insert an emergency drainage tube. The surgery took three and one-half hours. In September 2014, Plaintiff underwent a second surgery lasting seven and one-half hours. The second surgery attempted to make repairs to Plaintiff's eye and eye socket. Doctors at the University of Michigan planned a third surgery, but Corizon and its doctors (Tan, Pandya, Bomber, Bogerding and Whiteman) have refused to authorize the third surgery. Plaintiff has continuously sought the additional surgery without success.

In individual counts in his complaint, Plaintiff alleges that, notwithstanding Plaintiff's obvious and severe needs for urgent medical treatment, Defendant Myers delayed his medical treatment, failed to forward his complaints to a treating physician, refused to refer him to a specialist for eight days, and refused to give him his eye-pressure medication for more than three days. Plaintiff contends that Defendant Tan was the doctor responsible for his care at DWH, but Tan

delayed prescribing treatment, failed to treat, failed to refer Plaintiff to an eye specialist and failed to provide follow-up care and necessary surgery. Plaintiff alleges that, as the supervising doctor at DWH, Defendant Pandya was a gate-keeper for authorizing Plaintiff's medical treatment, but Pandya refused to provide necessary authorization. Similarly, Plaintiff alleges that Defendants Bomber, Bogerding and Whiteman were also gate-keeping employees of Corizon Health and the MDOC, who delayed and refused to authorize necessary medical treatment to Plaintiff.

Plaintiff alleges that, as the result of Defendants' Eighth and Fourteenth Amendment failures to protect him and to treat him, he is now permanently disfigured, disabled, partially blinded, and in constant pain. Plaintiff also alleges a variety of state tort claims. He seeks compensatory and punitive damages, together with declaratory relief.

### I. Sovereign Immunity

Plaintiff may not maintain a § 1983 action against the MDOC. Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). In numerous unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See*, *e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000

WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses the Michigan Department of Corrections.

II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility

standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Plaintiff fails to make specific factual allegations against Defendants Snow, Harry and Pant, other than his claim that they failed to adequately supervise their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendants Snow, Harry and

Pant engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

The Court concludes that Plaintiff's allegations are sufficient to warrant service of the complaint on the remaining Defendants.

### **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Michigan Department of Corrections, Snow, Harry and Pant will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c), on grounds of immunity and failure to state a claim. The Court will serve the complaint against the remaining Defendants.

An Order consistent with this Opinion will be entered.

Dated:  May 27, 2016                             /s/ Paul L. Maloney
                                                 Paul L. Maloney
                                                 United States District Judge