UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIAM COONROD,

        Plaintiff,

Case No. 1:16-cv-407

Hon. Paul L. Maloney

v.

UNKNOWN SHERMAN, *et al.*,

        Defendants.

_____ /

**REPORT AND RECOMMENDATION**

        This is a *pro se* civil rights action brought by a state prisoner in the custody of the Michigan Department of Corrections (MDOC) pursuant to 42 U.S.C. § 1983. This matter is now before the Court on motions for summary judgment filed by defendants Dr. Bomber, Corizon Health, Inc. (Corizon), Dr. Tan and Dr. Whiteman (docket no. 23), defendants Dr. Bogerding, Corrections Officer (CO) Bourque, Nurse Buren, Co Douglas, CO Hansen, CO Kingsley, Nurse Myers, Dr. Pandya, Deputy Warden Pratt, CO Sherman, CO Sobeck, CO Sour, CO Wilson and CO Zaborowski (docket no. 27), and defendant CO Ecklin (docket no. 32).

        **I.**    **Background**

        Plaintiff filed a complaint against 23 defendants arising from injuries he sustained when other prisoners attacked him on April 26, 2014, and medical staff failed to provide medical treatment while he was incarcerated at the Pugsley Correctional Facility (MPF). Compl. (docket no. 1). According to medical records on that date, plaintiff was hit in the head "with what he believes was a padlock in a sock." Munson Medical Center Records (April 26, 2014) (docket no. 1-2,

PageID.75). A consultation at the medical center found that plaintiff had significant fractures of the right nasal bone and medial orbital wall as well as right infraorbital rime due to direct trauma from his assailant, and that "the septum appears paradoxically shifted to the right side." Consultation Report (docket no. 1-2, PageID.86). The doctor recommended "operative fixation of all of the above." *Id*.

Plaintiff's allegations involve events leading up to, and including, the April 26, 2014 attack at MPF; medical treatment provided by MPF personnel after the attack; medical treatment provided by personnel at the MDOC's Duane Waters Hospital (DWH) through May 2014; plaintiff's first eye surgery at the University of Michigan in August 2014; plaintiff's second eye surgery in September 2014; and a recommended third eye surgery which has not yet occurred. *Id*.

Plaintiff's complaint consists of 25 counts. Counts 1, 2, 3, 4, 5, 6, 7, 8, 10, 15, 16, and 17 allege that MPF personnel Warden Harry, Deputy Warden Pratt, Capt. Pant, Capt. Snow, and CO's Sherman, Douglas, Sour, Wilson, Ecklin, Kingsley, Zaborowski and Bourque violated plaintiff's Fourteenth Amendment rights by failing to prevent the attack. Counts 9, 11, 12, 13 and 14 allege that MPF personnel Nurse Buren and CO's Zaborowski, Bourque, Hansen and Sobeck violated plaintiff's Eighth Amendment rights by being deliberately indifferent to his serious medical needs after the attack. Counts 18, 19 and 20 allege that DWH personnel Dr. Tan, Dr. Pandya and Nurse Myers violated plaintiff's Eighth Amendment rights by being deliberately indifferent to his serious medical needs in 2014. Counts 21, 22 and 23 allege that Drs. Bomber, Bogerding and Whiteman were supervising medical doctors for the MDOC and Corizon commencing in 2014 and as "Gate Keepers" prevented plaintiff from receiving his necessary eye surgeries. Count 24 alleges that Corizon violated plaintiff's Eighth Amendment rights by delaying and refusing treatments for

plaintiff. Count 25 alleges that the MDOC violated plaintiff's Fourteenth and Eighth Amendment rights. After screening, the Court dismissed defendants Capt. Pant, Capt. Snow, Warden Harry and the MDOC, and authorized service on the remaining 19 defendants. Opinion and Order (docket nos. 2 and 3).

### II.     Defendants' motions for summary judgment

#### A.     Legal standard

Defendants have moved for summary judgment on the ground that plaintiff failed to properly exhaust a grievance with respect to his claims. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support

> plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

### B.     Failure to Exhaust

#### 1.     Exhaustion requirement

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

4

### 2. MDOC Grievance process

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R. The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original). The prisoner must send the Step I grievance to the appropriate grievance coordinator. *Id.* at ¶ V. If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator. *Id.* at ¶ BB. Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section. *Id.* at ¶ FF.

### 3. Discussion

The Court's order regarding service stated in pertinent part that "After a Defendant has filed an appearance, proceedings in this case will be governed by the Court's Standard Case Management Order in a Prisoner Civil Rights Case." Order (docket no. 3). Before a case management order was issued, Corizon and Drs. Bomber, Tan and Whiteman moved for summary

judgment, based upon the fact that the only grievance filed in this matter was not exhausted until after plaintiff filed this action. *See* MDOC Prisoner Step III Grievance Report (docket no. 23-1, PageID.172); Grievance JCS 2016-03-0213-12D ("213") (docket no. 23-1, PageID.173-178). The other defendants filed motions for summary judgment and supporting briefs which adopted this argument.

In response to the motions, plaintiff points out that the motions were filed prior to the issuance of a case management order. The Court's standard case management order provides in pertinent part that if a defendant files a motion for summary judgment raising only failure to exhaust remedies (as in plaintiff's case), "a period of 45 days will be allowed for plaintiff's discovery, limited to the exhaustion issue only," and that plaintiff's response to the motion will be due 28 days after the close of this limited discovery period. While plaintiff contends that defendants' motions are unauthorized or premature, the issues raised in the motions are squarely before the Court and can be addressed on the present record.

Plaintiff's remaining claims fall into four categories. First, plaintiff alleged that personnel at MPF failed to protect him from the April 26, 2014 attack. Second, plaintiff alleged that personnel at MPF failed to address his medical concerns immediately after the attack. Third, plaintiff alleged that DWH personnel failed to provide medical care in the days following the attack. Fourth, plaintiff alleged that DWH personnel failed to provide followup care, including authorization of a third eye surgery.

It is undisputed that plaintiff did not file a grievance immediately after the 2014 attack. In his affidavit filed in opposition to defendants' motions, plaintiff states: that on April 26, 2014, he was attacked while watching television near his bunk; that for the 10 minutes he waited

6

outside the control center after the attack, he had no access to grievance forms; that he was taken to the medical department; that he had no access to grievance forms for the 90 minutes at the medical department; that he had no access to grievance forms while being driven to the Munson Medical Center in Traverse City, Michigan; that he had no access to grievance forms for the 48 hours he was hospitalized at Munson Medical Center; that he was transported back to MPF, where he spent 15 minutes in a phone booth with no access to grievance forms; that he was driven to DWH in Jackson, Michigan; that he had no access to grievance forms during the drive; that he was taken to the DWH emergency room, where he did not have access to grievance forms; and, that he was kept in protective custody / administrative segregation for 10 days at DHW, where he did not have access to grievance forms. Coonrod Aff. (docket no. 37). In short, plaintiff contends that his medical condition after the attack prevented him from exhausting available administrative remedies. Plaintiff's affidavit creates a genuine issue of material fact with respect to whether he was physically able to file grievances and exhaust his claims against staff at MPF and DHW for claims which arose immediately after his attack, i.e., the first, second and third categories of claims referenced above. Defendants have not addressed plaintiff's contention that he should be excused from exhausting his claims due to his serious medical condition in the days and weeks following the attack. In order to determine whether plaintiff could have exhausted these claims back in 2014, the undersigned proposed to enter a standard case management order, which will provide an opportunity for defendants to raise the issue of exhaustion with respect to the 2014 claims and for plaintiff to have limited discovery with respect to exhaustion.

       This leaves Grievance No. 213, which is the only grievance related to the matters alleged in plaintiff's complaint. The record reflects that this grievance was filed on March 16, 2016,

and that plaintiff signed and filed his complaint before he had even received the Step I response to the grievance.[1]  In this grievance, plaintiff complained that Corizon representatives and unnamed "J.C.S. Health Care" and "MDOC doctors" failed for over 18 months to schedule a third surgery to correct his right eye.  *See* Grievance No. 213 (docket no. 23-1, PageID.176).

       The Court previously summarized this aspect of plaintiff's claim as follows:

       In August of 2014, Plaintiff finally received his first surgery to insert an emergency drainage tube.  The surgery took three and one-half hours.  In September 2014, Plaintiff underwent a second surgery lasting seven and one-half hours.  The second surgery attempted to make repairs to Plaintiff's eye and eye socket.  Doctors at the University of Michigan planned a third surgery, but Corizon and its doctors (Tan, Pandya, Bomber, Bogerding and Whiteman) have refused to authorize the third surgery.  Plaintiff has continuously sought the additional surgery without success.

       In individual counts in his complaint . . . plaintiff alleges that, as the supervising doctor at DWH, Defendant Pandya was a gate-keeper for authorizing Plaintiff's medical treatment, but Pandya refused to provide necessary authorization.  Similarly, Plaintiff alleges that Defendants Bomber, Bogerding and Whiteman were also gate-keeping employees of Corizon Health and the MDOC, who delayed and refused to authorize necessary medical treatment to Plaintiff.

Opinion (docket no. 2, PageID.130-131).

       For purposes of exhaustion, plaintiff's "gate-keeping" claims against defendants Corizon and Drs. Bomber, Bogerding and Whiteman with respect to the third eye surgery (referred to by the undersigned as the fourth category of plaintiff's claims), are supported only by Grievance

---

[1] Under the prison mailbox rule, a prisoner's court papers are deemed filed at the time he "delivered it to the prison authorities for forwarding to the court clerk." *Houston v. Lack*, 487 U.S. 266, 276 (1988).  "Under this relaxed filing standard, a *pro se* prisoner's complaint is deemed filed when it is handed over to prison officials for mailing to the court.  Cases expand the understanding of this handing-over rule with an assumption that, absent contrary evidence, a prisoner does so on the date he or she signed the complaint." *Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (internal citations omitted).  Here, plaintiff signed his complaint on April 7, 2016, five days before prison officials provided the Step I response to the grievance. *See* Compl. (docket no. 1, PageID.40); Grievance Response (docket no. 23-1, PageID.177).  Although the docket sheet reflects that the complaint was filed on April 25, 2016, under the prison mailbox rule, the Court considers plaintiff's complaint filed on April 7, 2016.

No. 213. However, these most recent claims should be dismissed due to lack of proper exhaustion. A prisoner "may not exhaust administrative remedies during the pendency of the federal suit." *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999). Thus, "[w]hen a prisoner has filed a civil rights complaint in federal court without first exhausting his administrative remedies, dismissal of the complaint is appropriate." *Williams v. Norton*, 23 Fed. Appx. 396, 397 (6th Cir. 2001). Based on this record, plaintiff has not properly exhausted his "gate-keeping" claims against defendants Corizon and Drs. Bomber, Bogerding and Whiteman with respect to authorization of the third eye surgery. *See Jones*, 549 U.S. at 218-19; *Woodford*, 548 U.S. at 90-93; *Freeman*, 196 F.3d at 645. Accordingly, this claim should be dismissed for lack of proper exhaustion.

### III.     Recommendation

For these reasons, I respectfully recommend that the motion for summary judgment filed by defendants Corizon, Dr. Bomber, Dr. Tan and Dr. Whiteman (docket no. 23) be **GRANTED** with respect to plaintiff's claims regarding their alleged failure to authorize the third eye surgery as referenced in Grievance 213, and **DENIED** without prejudice in all other respects.

I further recommend that the motion for summary judgment filed by defendant Dr. Bogerding (docket no. 27) be **GRANTED** with respect to plaintiff's claims regarding his alleged failure to authorize the third eye surgery as referenced in Grievance 213, and **DENIED** without prejudice in all other respects.

I further recommend that the motions for summary judgment filed by defendants Bourque, Buren, Douglas, Hansen, Kingsley, Myers, Pandya, Pratt, Sherman, Sobeck, Sour, Wilson and Zaborowski (docket no. 27) and defendant Ecklin (docket no. 32) be **DENIED** without prejudice.

I further recommend that the undersigned enter the Court's standard prison case management order with respect to the remaining claims against defendants and that defendants are not foreclosed from filing motions for summary judgment with respect to whether plaintiff properly exhausted his claims arising in 2014.

Dated:  February 8, 2017          /s/ Ray Kent
                                                      RAY KENT
                                                      United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).